STATE EX REL. FORTE, Appellant, v. FERRIS, and others, Respondents.

*No. 76–226–CR.  Argued June 2, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 594.)

For the appellant there were briefs by *James J. Ewers* and *Eisenberg, Giesen & Ewers,* and oral argument by *James J. Ewers,* all of Madison.

For the respondents the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ABRAHAMSON, J.   Richard L. Forte was convicted of armed robbery on July 2, 1969. He received a twenty-five-year sentence to Waupun State Prison, and he was placed on parole with in-state supervision in 1973. The record does not reveal the complete conditions of his parole. On September 22, 1975, Forte was convicted of carrying a concealed weapon but his parole was not revoked at that time. On January 12, 1976, he was arrested as a suspect in the murder of one Sam Anderson.

After three days in the Dane county jail, Forte was released, and Charles May was charged with the murder. On the day of his release Forte requested and received permission from the Wisconsin parole authorities to travel to Illinois. He was further allowed to remain there pending acceptance of his supervision by Illinois authorities. That acceptance was refused but, after submission of modified proposed conditions, was still pending when the following events took place.

At the request of defense counsel for Charles May, the Dane county trial court proceeded under sec. 976.02, Stats., the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings.[1] The trial court issued a certificate, pur-

[1] Sec. 976.02, Stats., reads as follows:

"(1) DEFINITIONS. 'Witness' as used in this section includes a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding. 'State' includes any territory of the United States and the District of Columbia. 'Summons' includes a subpoena order or other notice requiring the appearance of a witness.

"(2) SUMMONING WITNESS IN THIS STATE TO TESTIFY IN ANOTHER STATE. (a) If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within the state is a material witness in such prosecution or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing and shall make an order directing the witness to appear at a time and place certain for the hearing.

"(b) If at the hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending, or

suant to sec. 976.02(3)(a), Stats., requesting a judge of a court in Cook county, Illinois (the county where Forte

grand jury investigation has commenced or is about to commence, and of any other state through which the witness may be required to pass by ordinary course of travel, will give to the witness protection from arrest and the service of civil and criminal process, the judge shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence, at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein.

"(c) If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for said hearing; and the judge at the hearing being satisfied of the desirability of such custody and delivery, for which determination the certificate shall be prima facie proof of such desirability, may, in lieu of issuing subpoena or summons, order that said witness be forthwith taken into custody and delivered to an officer of the requesting state.

"(d) If the witness, who is summoned as above provided, after being paid or tendered by some properly authorized person the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and $5 for each day that he is required to travel and attend as a witness, fails without good cause to attend and testify as directed in the summons, he shall be punished as provided for the punishment of any witness who disobeys a summons issued from a court of record in this state.

"(3) WITNESS FROM ANOTHER STATE SUMMONED TO TESTIFY IN THIS STATE. (a) If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the num-

resided) to conduct a hearing to determine if a summons should be issued directing Forte to attend and testify in the court where the prosecution of May was pending. The hearing was held in Cook county on April 27, 1976, at which time the Illinois court determined that Forte was a necessary and material witness, that his attendance at the trial would not cause him undue hardship and that the laws of Wisconsin would protect him from

ber of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

"(b) If the witness is summoned to attend and testify in this state he shall be tendered the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and $5 for each day that he is required to travel and attend as a witness. A witness who has appeared in accordance with the summons shall not be required to remain within this state a longer period of time than otherwise ordered by the court. If such witness, after coming into this state, fails without good cause to attend and testify as directed in the summons, he shall be punished as provided for the punishment of any witness who disobeys a summons issued from a court of record in this state.

"(4) EXEMPTION FROM ARREST AND SERVICE OF PROCESS. (a) If a person comes into this state in obedience to a summons directing him to attend and testify in this state he shall not while in this state pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons.

"(b) If a person passes through this state while going to another state in obedience to a summons to attend and testify in . that state or while returning therefrom, he shall not while so passing through this state be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance to this state under the summons.

"(5) UNIFORMITY OF INTERPRETATION. This section shall be so interpreted as to make uniform the law of the states which enact it."

arrest and service of civil and criminal process (as stated in the certificate of the Wisconsin court). Accordingly, a summons was issued directing Forte to appear at the trial in Dane county on May 4, 5, and 6, 1976. Forte, obeying the summons, went to Madison at the proper time.

At the trial Forte refused to testify after a grant of immunity and he was jailed for contempt of court. The next day Kent Carlson, Forte's Wisconsin parole agent, noticed Forte's name on the jail roster and placed a parole detainer on him to allow time for investigation into the reasons for his incarceration. Sec. 57.06(3), Stats. The following day the contempt order was lifted, but because of the parole detainer Forte remained in jail. On May 10, 1976, while still subject to the parole detainer, Forte was served with a criminal complaint charging him with first-degree murder. Two days later he petitioned for a writ of habeas corpus, challenging his detention on the grounds that it violated sec. 976.02(4)(a), Stats., which protected him from arrest or the service of civil and criminal process. Subsequently parole revocation proceedings were commenced, the alleged violations being possession of knives and other weapons on three different occasions. All the alleged violations occurred prior to Forte's return to Wisconsin under the summons issued April 27, 1976. Forte is presently an inmate at Waupun, his parole having been revoked. His petition for habeas corpus argues that the parole revocation proceedings are void and that he must be returned to Illinois before further proceedings may be taken against him, in fulfillment of the immunity granted him under sec. 976.02, Stats.

There is no dispute that Forte was extradited from Illinois pursuant to the Illinois counterpart of sec. 976.02, Stats.,[2] and that all procedural requisites for his

[2] Ill. S.H. ch. 38, secs. 156–1 to 156–6.

extradition as a witness were complied with. It is also undisputed that no parole revocation proceedings were pending or actively under consideration when the extradition took place. Opposing the petition, respondents argued that under sec. 57.13, Stats., the Out-of-State Parole Supervision Act,[3] Wisconsin could have removed

---

[3] Sec. 57.13, Stats., reads as follows:

"The governor of this state is authorized and directed to enter into a compact on behalf of this state with any state of the United States legally joining therein in the form substantially as follows:

"A COMPACT.

"Entered into by and among the contracting states, signatories hereto, with the consent of the congress of the United States of America, granted by an act entitled 'An act granting the consent of congress to any two or more states to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and for other purposes.'

"The contracting states solemnly agree:

"(1) That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this contract (herein called 'sending state') to permit any person convicted of an offense within such state and placed on probation or released on parole to reside in any other state party to this compact (herein called 'receiving state') while on probation or parole, if

"(a) Such person is in fact a resident of or has his family residing within the receiving state and can obtain employment there; or

"(b) Though not a resident of the receiving state and not having his family residing there, the receiving state consents to such person being sent there.

"(c) Before granting such permission, opportunity shall be granted to the receiving state to investigate the home and prospective employment of such person.

"(d) A resident of the receiving state, within the meaning of this section, is one who has been an actual inhabitant of such state continuously for more than one year prior to his coming to the sending state and has not resided within the sending state more than 6 continuous months immediately preceding the commission of the offense for which he has been convicted.

Forte from Illinois without any court proceedings there; Wisconsin could have dispatched representatives to Il-

"(2) That each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.

"(3) That the duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are expressly waived on the part of states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state; provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense.

"(4) That the duly accredited officers of the sending state will be permitted to transport prisoners being retaken through any and all such states parties to this compact, without interference.

"(5) That the governor of each state may designate an officer who, acting jointly with like officers of other contracting states, if and when appointed, shall promulgate such rules and regulations as may be deemed necessary to more effectively carry out the terms of this compact.

"(6) That this compact shall become operative immediately upon its ratification by any state as between it and any other state or states so ratifying. When ratified it shall have the full force and effect of law within such state, the form of ratification to be in accordance with the laws of the ratifying state.

"(7) That this compact shall continue in force and remain binding upon such ratifying state until renounced by it. The duties and obligations hereunder of a renouncing state shall continue as to parolees or probationers residing therein at the time of withdrawal or until finally discharged by the sending state. Renunciation of this compact shall be by the same authority

linois to pick up and return Forte to Wisconsin without recourse to extradition. Sec. 57.13 (3), Stats.

The circuit court denied the application for the writ on June 15, 1976, and this appeal followed.

It is important to make clear that in this case we are not determining the relationship of secs. 976.02 and 57.13, Stats., or the statutory or constitutional problems, if any, which may exist if the state has a choice of which of two statutes to use. *Cf. State ex rel. Niederer v. Cady,* 72 Wis.2d 311, 240 N.W.2d 626 (1976); *State ex rel. Garner v. Gray,* 55 Wis.2d 574, 201 N.W.2d 163 (1972).

This case is decided on the narrow issue, presented by the facts of the case, whether the State of Wisconsin, having proceeded under sec. 976.02, Stats., may thereafter determine that it is not bound by that statute.

In the case at bar, the Wisconsin trial court proceeded under sec. 976.02, Stats., to have Forte returned to this state to attend and testify in a criminal action. The certificate of a circuit judge for Dane county, pursuant to sec. 976.02 (2) (b), Stats., stated that the laws of Wisconsin protect Forte from arrest or process.[4] After a

which ratified it, by sending 6 months' notice in writing of its intention to withdraw the compact to the other states party thereto.

"...

"(9) This section may be cited as the 'Uniform Act for Out-of-State Parolee Supervision.' "

[4] The certificate provides in part:

"4. That if said Richard Forte, as such witness, comes into the State of Wisconsin in obedience to a summons directing him to attend and testify at said trial, the laws of the State of Wisconsin and of any state through which said witness may be required to pass by the ordinary course of travel to attend said trial, give him protection from the arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into said state pursuant to said summons.

"5. That this certificate is made for the purpose of being presented to a judge of a court of record of the County of Cook, State of Illinois, where said Richard Forte now is, upon proceed-

hearing before the criminal division of the Circuit Court for Cook County, pursuant to sec. 976.02(3)(a), the Illinois judge issued a summons to Forte to testify in May's trial, which summons reiterated Wisconsin's assurance of protection for Forte from arrest or process.[5]

We hold that, as a matter of public policy, the state, having invoked the laws and courts of the State of Illinois, and the State of Wisconsin having assured Forte exemption from arrest or process while he was a witness in Wisconsin, may not, after Forte arrives in Wisconsin, withdraw or limit the protections assured by the laws invoked or the court documents filed. The parole detainer order is tantamount to an arrest. *See* sec. 57.06 (3), Stats., and *Huebner v. State*, 33 Wis.2d 505, 516,

ings to compel said Richard Forte to attend and testify at the trial in said criminal prosecution before this Court in the State of Wisconsin upon the days and dates hereinbefore set forth."

[5] The summons provides in part:

". . . that the presence of said Richard Forte as a witness for the State of Wisconsin upon said trial is required on the following dates: for three (3) days commencing on the 4th day of May, A.D. 1976 and that the laws of the State of Wisconsin in which such prosecution is pending, and of any other state or states through which said Richard Forte as said witness in attending said trial may be required to pass by the ordinary course of travel, give him protection from arrest and the service of civil and criminal process while in said or going or passing through said state, in obedience to a Summons directing said Richard Forte to attend and testify in said State of Wisconsin in said criminal prosecution and while returning therefrom, in connection with matters which arose before his entrance into said state pursuant to said Summons, all of which appears from a Certificate of the Judge of the Circuit Court of Dane County, State of Wisconsin assigned to the trial of Circuit Court criminal matter for Dane County, State of Wisconsin, a court of record, of which a copy is hereto attached and made a part hereof: and it is further found that the attendance of said Richard Forte as such witness upon said trial on the dates aforesaid as a witness for the State of Wisconsin upon said criminal prosecution will not cause undue hardship to said Richard Forte."

147 N.W.2d 646 (1967) ("The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest.").

Respondents contend that sec. 976.02(4), Stats., was not intended to create any greater immunity from arrest or process than would be necessary to preserve the *status quo* of the person as it existed prior to extradition as a witness. The Department, in taking Forte into custody while he was in Dane county, Wisconsin, was doing that which it was entitled to do under sec. 57.13(3), were Forte still in Illinois. This argument is an interesting legal interpretation, but it is contrary to the absolute, unequivocal, unqualified language of sec. 976.02, Stats., Ill. S.H. ch. 38, secs. 156-1 to 156-6, and the documents issued by the Wisconsin and Illinois courts. As the Oklahoma Court of Criminal Appeals said in *Wright v. Oklahoma*, 500 P.2d 582, 588 (1972):

"As a condition of delivery the Uniform Act *demands a guarantee* against arrest or summons while the witness is going to, at, or coming from the demanding state."

We are not deciding the relationship of sec. 976.02 and sec. 57.13, Stats., or the merits of the parole revocation. Under the circumstances of the case, we hold, as a matter of public policy, that the state had a duty to conform to the statute under which it chose to act, that Forte and the Illinois courts have a right to rely on conformance, and that this court must enforce conformance.[6]

[6] *Cf. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970); *Sangamon Valley Television Corp. v. United States*, 269 F.2d 221 (D.C. Cir. 1959); Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L. Rev. 629 (1974). "An agency of the government must scrupulously observe rules, regulations, or procedures which it has es-

*By the Court.*—Order reversed and cause remanded with directions to grant Forte's petition for a writ of habeas corpus; Forte, a paroled prisoner, to be released to the legal custody of the Department of Health and Social Services for supervision as a paroled prisoner.

CONNOR T. HANSEN, J. *(dissenting).* I respectfully dissent from the decision of the majority and would affirm the order of the trial court.

The facts are undisputed. Forte was returned to Wisconsin from Illinois to appear as a witness in response to a certificate and summons issued pursuant to sec. 976.02, Stats., *Uniform Act for the Extradition of Witnesses in Criminal Actions.* The proceedings for the return of Forte were instigated by the defendant in a case then pending in the Wisconsin court. It also appears that at the time Forte returned to Wisconsin to appear as a witness, he was on parole for a prior conviction in Wisconsin and that he was in Illinois with the knowledge and consent of the Wisconsin parole authorities.

During the course of the trial in which Forte was to testify, the trial court found him in contempt of court and he was incarcerated. While thus incarcerated, his parole agent in making a routine check of the jail roster observed Forte's name, and instituted parole revocation proceedings based upon his conduct prior to his return to Wisconsin to appear as a witness. His parole was revoked and he was returned to a penal institution.

On these facts, the majority would hold that a writ of habeas corpus should be granted because under sec. 976.02, Stats., when Forte was returned to Wisconsin as

tablished. When it fails to do so, its action cannot stand and courts will strike it down." *United States v. Heffner,* 420 F.2d 809, 811 (4th Cir. 1969). Such deviations "cannot be reconciled with the fundamental principle that ours is a government of laws, not men." *Hammond v. Lenfest,* 398 F.2d 705, 715 (2d Cir. 1968).

a witness in a criminal case he was afforded "protection from arrest and the service of civil and criminal process."

The majority sees the narrow issue to be whether Wisconsin, having proceeded under sec. 976.02, Stats., may thereafter determine it is not bound by the statute. They then continue to hold as a matter of "public policy" that Wisconsin may not withdraw or limit the protections assured by the laws involved or the court documents filed. I do not perceive this to be the issue of the case, nor do I consider it to be an appropriate case for the exercise of a judicial public policy determination.

In my opinion, the issue is whether sec. 976.02, Stats., is applicable to or can be construed so as to include parole revocation proceedings. Forte was not returned to Wisconsin because he was on parole, but to appear as a witness in a criminal case. One is prompted to inquire what would happen if the conduct of Forte, while in Wisconsin under summons as a witness, was such that in the judgment of the parole authorities, proceedings should be instituted to revoke his parole?

I respectfully submit that the majority has, in effect, by judicial decision amended a legislative enactment. The statute must now be read to say that a proceeding under sec. 976.02, Stats., requires the state to "give to the witness protection from arrest and the service of civil and criminal process and parole revocation proceedings." The provisions of sec. 976.02 do not apply to parole revocation proceedings and the order of the trial court should be affirmed.

I am authorized to state that Mr. Justice HANLEY and Mr. Justice ROBERT W. HANSEN join in this dissenting opinion.